**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN KROPA,** | : | **No. 3:08cv551** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CABOT OIL & GAS** | : | |
| **CORPORATION,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

_____Before the court for disposition is the defendant's motion to dismiss. Having been fully briefed and argued, the matter is ripe for disposition.[1]

**Background**

Plaintiff John Kropa of Hop Bottom, Pennsylvania entered into a preprinted form oil and gas lease with Defendant Cabot Oil and Gas Corporation covering fifty-one (51) acres of real property located in Brooklyn Township, Susquehanna County, Pennsylvania.  (Doc. 17, Amended Complaint at ¶¶ 1, 4, 5).

As an inducement to sign the lease, defendant offered the plaintiff $1,275.00 representing $25.00 per acre of property.  (Id. at ¶¶ 7-8). Defendant told plaintiff:  "Defendant would never pay any more than $25.00 per acre so he better take the $25.00 per acre and that the Plaintiff will never get anymore."  (Id. at ¶ 8).  Plaintiff has since learned that this statement is inaccurate and that defendant has paid his neighbors more than $25.00 per acre.  (Id. at ¶ 9).  Defendant also informed plaintiff that the lease conformed to Pennsylvania law, but according to the plaintiff, it

_____

[1]This case raises the same issues as approximately thirteen other cases that have been filed against the same defendant.  The parties agreed to proceed with this case and stay the others at least until this motion to dismiss was resolved.

does not.  (Id.  at ¶ ¶ 10 -11).

Based upon these allegations the plaintiff instituted the instant action asserting two counts:

Count I, Fraudulent Inducement (Id. at ¶ ¶  12 - 18), regarding the statements that he would never be offered more than $25.00 per acre and that the lease conformed to Pennsylvania law.

Count II, Action for Declaratory Relief, in which plaintiff seeks to have the court deem the lease invalid under 58 PENN. STAT. § 402(8).  - - The Oil and Gas Conservation Law.

Defendant filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), bringing the case to its present posture.[2]

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiff is a citizen of Pennsylvania (Doc. 17, Amended Complaint at ¶ 1), and the defendant is a Delaware corporation with a principal place of business in Houston, Texas.  (Doc. 1, Notice of Removal at ¶ 5).  Because we are sitting in diversity, the

---

[2]The case was originally filed in the Susquehanna County Pennsylvania Court of Common Pleas.  Defendant removed the case to this court on March 25, 2008 based upon diversity of citizenship.   (Doc. 1, Notice of Removal).  On March 31, 2008, defendant filed a motion to dismiss the complaint.  (Doc. 2).   On June 10, 2008, the parties filed a stipulation that indicated that the plaintiff would file an amended complaint and that the motion to dismiss should be deemed as filed with regard to the amended complaint.  (Doc. 16, Stipulation).  Plaintiff filed the amended complaint on June 11, 2008.  (Doc. 17).  We will therefore treat the motion to dismiss as if filed against the amended complaint.

substantive law of Pennsylvania applies to the instant case.  <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 158 (3d Cir. 2000) (<u>citing</u> <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

**Standard of review**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

The motion to dismiss attacks both counts of the plaintiff's complaint, and we will discuss them separately.

**I.  Fraudulent Inducement**

Count I of plaintiff's complaint advances a cause of action for fraudulent inducement (Doc. 17, Amended Compl.  at ¶¶ 12 - 18), regarding the statements made by defendant's representative that plaintiff would never be offered more than $25.00 per acre to lease the property and that the lease conformed to Pennsylvania law.  The complaint avers: "what the Defendant's agent told Plaintiff was false, and that Defendant has in fact offered and paid Plaintiff's neighbors more than $25.00 per acre, and continues to offer and pay more than $25.00 per acre to others. Had Plaintiff known Defendant's representations were false, Plaintiff would not have entered into the lease." (Doc. 17, Amended Complaint, ¶¶ 17-

18).

Thus, plaintiff asserts a fraudulent inducement cause of action. Fraudulent inducement may be found where a contracting party made false representations "that induced the complaining party to agree to the contract." Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 205 (Pa. 2007) (internal quotation marks and citations omitted).   The law provides that:

> "Fraud" consists of "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." Moser v. DeSetta, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991). To demonstrate fraud, the plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 207-08, 647 A.2d 882, 889 (1994). The essence of fraud is "a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim."

Martin v. Hale Products, Inc., 699 A.2d 1283, 1287-88 (Pa. Super. Ct. 1997).

As set forth above, plaintiff claims that the statements made by defendant's representative before entering into the contract, i.e., that he would never be paid a bonus of more than $25.00 per acre, and that the contract conformed to Pennsylvania law, fraudulently induced him to enter into the contract.

Defendant initially argues that Count I, Fraudulent Inducement must be dismissed because the contract includes an integration clause and under Pennsylvania law if a contract includes an integration clause, the

4

parol evidence rule bars  extrinsic evidence of any matters not included within the written contract.  Because the claim for fraudulent inducement relies on extrinsic evidence, the claim is barred.  The plaintiff does not necessarily disagree with the defendant regarding the law of fraud in the inducement.  He argues, however, that the contract is not fully integrated.

The parol evidence rule bars evidence of "previous oral or written negotiations or agreements involving the same subject matter as the contract . . .  to explain or vary the terms of the contract."  Yocca v. Pittsburgh Steeler Sports, Inc., 854 A.2d 425, 436-37 (Pa. 2004).   With regard to fraud in the inducement, representations made prior to contract formation are considered  superseded and disclaimed by a fully integrated written agreement.  Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 206-07 (Pa. 2007).   The issue we are presented with, therefore, is whether the contract is fully integrated.

The integration clause in the lease provides :

> This lease embodies the entire agreement between the parties and no representations or promise on behalf of either party shall be binding unless contained herein or mutually agreed to in writing by all parties hereto.

(Doc. 1, at 12-15, Lease entered into by the parties ("hereinafter "lease") ¶ 15).

The integration clause does not totally disavow any prior representations or promises, but states that any such representations or promises shall not be binding unless in the agreement or another writing. Plaintiff asserts that because this integration clause does not deny representations between the parties, but merely limits their effect, parol evidence should be allowed to prove fraudulent inducement.  Plaintiff cites to no law to support this position, and we find his position unconvincing.

5

We turn to Pennsylvania law to determine if an agreement is integrated so as to make the parol evidence rule applicable,

> To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties.... An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

Yocca, 854 A.2d at 497-98 (internal quotation marks, brackets and citations omitted).

Thus, an integration clause stating that the contract is the entire agreement for the parties is a clear sign that the agreement is integrated. In the instant case, the integration clause in relevant part states: "This lease embodies the entire agreement between the parties[.]" (Lease, ¶ 15). Accordingly, upon initial review, it appears that the lease contract is fully integrated and its terms cannot be changed by evidence of prior verbal agreements.

At oral argument, the court raised the issue of whether the fact that the bonus payment calculation is not found in the lease contract alters the legal analysis of the integration clause.  The parties submitted supplemental briefs on this issue. (Doc. 30, Doc. 32).

The defendant points out that the integration clause is inapplicable to other agreements "mutually agreed to in writing by the parties."  (Id.).   The lease provides that the consideration exchanged for the leasing rights included, "Ten Dollars ($10.00) and other good and valuable

consideration[.]" (Id. at ¶ 1).  Defendant refers to this "other good and valuable consideration" as the "bonus payment."

Defendant has submitted a "consideration letter" or "payment letter" that is signed by both the plaintiff and defendant. This document contains the $1275.00 bonus payment language.  (Doc. 30-2, pg. 6).

Defendant argues that it is appropriate that the separate writings be considered together.  We agree with this proposition, but it is not determinative of this issue.  The law provides that:

> It is a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together. The Pennsylvania cases indicate that even where there is no specific reference to a prior agreement or prior agreements, several contracts shall be interpreted as a whole and together.

Shehadi v. Northeastern Nat'l Bank, 378 A.2d 304, 306 (Pa. 1977) (citations omitted).  See e.g, Amin v. Lammers, No. Civ. A. 94-5980, 1995 U.S. Dist. WL 231048 (E.D. Pa. April 18, 1995) ("Under Pennsylvania law, separate contracts that are entered into at the same time as part of the same business action are construed together.") (citations omitted); International Milling Co. v. Hachmeister, 110 A.2d 186, 191 (Pa. 1955) ("If contracting parties choose they may express their agreement in one or more writing and, in such circumstances, the several documents are to be interpreted together, each one contributing (to the extent of its worth) to the ascertainment of intent of the parties.")(citations omitted); Kroblin Refrigerated Express, Inc. v. Pitterich, 805 F.2d 96, 107 (3d Cir. 1986) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties.") (citations omitted).

7

See also, Amin at *12 (citing International Milling Co., 110 A.2d at 191) (Kroblin Refrigerated Express, Inc., 805 F.2d at 107-109) ("The presence of integration clauses in separate agreements is not a bar to the agreements being construed together as long as the agreements are part of the same business transaction."); Neville v. Scott, 127 A.2d 755, 757 (1956) (where two agreements are made as part of one transaction they will be read together to express the essential elements of the parties' undertaking, notwithstanding the presence of an integration clause in the second agreement).

In the instant case, the three documents signed by the parties set forth the entire agreement between them.  The main lease agreement sets forth most of the terms of the contract and refers to further consideration. The "consideration letter" contains the calculation of that consideration. The defendant's position is that because of this law, the two writings can be read together as one fully integrated agreement.[3]   The second agreement, the consideration letter, does not contain an integration clause. While these documents may be construed together as part of the same business transaction, it does not necessarily follow that the integration clause found in one of these documents covers the others.

Thus, the question now becomes whether one integration clause can apply to two agreements, which can be read together as part of one transaction,  where one of the agreements provides a term for the other

---

[3]The third writing, which is not at issue in the instant case, is an "addendum" signed plaintiff that indicates that "[t]he location of any well, pipeline, access road or related facility constructed by the Lessee upon the leased premises shall be chosen by mutual consent between the Lessor and Lessee."  (Doc. 30-2, pg. 4).

contract.   Defendant argues that the absence of an integration clause in the consideration letter does not matter as that agreement is covered by the integration clause in the lease agreement.  Defendant cites no law in support of this position.  Our research has revealed a dearth of case law on this issue.

One Pennsylvania Supreme Court case, Neville v. Scott, 127 A.2d 755 (Pa. 1957), tangentially addresses this issue.  In that case, the plaintiff entered into a written contract, whereby the defendant agreed to build a dwelling for the plaintiff.  Id. at 756.  As part of the consideration for the building, the plaintiff conveyed to defendant the lot upon which the building was to be built with the agreement that it would be re-conveyed to the plaintiff once the house was completed.  Id.  This conveyance/reconveyance of the lot was agreed to in a second writing, which provided that the house would be considered completed when it received final construction approval from the Federal Housing Administration.  Id. at 757.  The second agreement contained an integration clause, but the first agreement did not.  Id.

Eventually, plaintiff sued defendant under the first contract, asserting defective construction of the house.  Id.  The defendant answered and alleged that pursuant to the second agreement, the house was complete as it was approved by the FHA and the lot had been reconveyed to the plaintiff.  Id.  The plaintiff presented testimony that at the time of the reconveyance, he brought up his complaints about the construction of the house and the defendant verbally promised to remedy them.  Id.  The court held that the two contracts could be read together and that "[t]he presence of the integration clause is not controlling, since the second agreement did

not fully express the essential elements of the parties' undertaking[.]" Id.
The court found that the issue was whether the two documents could be
read together, not whether the integration clause would prohibit evidence
of verbal agreements.  Id.  The fact that the court held that the two
agreements could be read together regardless of the integration clause
indicates that the Pennsylvania Supreme Court would not strictly apply the
parol evidence rule where two contracts must be read together and only
one has an integration clause.

Moreover, the law provides for the parol evidence rule to apply to a
writing the writing must be the entire contract.  The Pennsylvania Superior
Court has explained as follows:

> [t]he writing must be the entire contract between the
> parties if parol is to be excluded and to determine
> whether it is or not the writing will be looked at and
> if it appears to be a contract complete within itself,
> couched in such terms as import a complete legal
> obligation without any uncertainty as to the object or
> extent of the engagement it is conclusively
> presumed that the whole engagement of the parties
> and the extent and manner of their undertaking,
> were reduced to writing.

Fountain Hill Millwork Bldg. Supply Co. v. Belzel, 587 A.2d 757, 760
(Pa. Super. Ct. 1991) (quoting Gianni v. Russel & Co., 126 A. 791,792 (Pa.
1924).

As noted above, the instant case does not have one writing, but two
relevant writings, the lease agreement and the bonus payment "letter."
This letter is actually another agreement between the plaintiff and
defendant.  It provides the amount of consideration that will be paid under
the contract, and contains signatures from both the plaintiff and defendant.
It does not contain an integration clause.  This is the contract- or portion of
the contract- that the plaintiff contends he was fraudulently induced into

entering with regard to the statement by defendant's representative that plaintiff would never be offered more than twenty-five dollars as bonus payment.

Because two contracts are at issue, and the one that the plaintiff complains of does not contain an integration clause, we find it inappropriate to grant the defendant's motion to dismiss based upon the parol evidence rule at this time. Discovery and evidence presented to the court may be helpful in ultimately determining this issue.  For example, it may be pertinent to the ruling to know when exactly the different agreements were signed, that is, were they executed at the same time, and if not, which one was entered into first and how much time elapsed between signing the agreements.  Therefore, we will deny this argument at this time without prejudice to the defendant raising it again at the appropriate time.[4]

Part of plaintiff's fraudulent inducement claim is that he was fraudulently induced into entering the contract by the defendant claiming that the lease conforms to Pennsylvania law.  Plaintiff asserts that the lease does not conform to Pennsylvania law because of the royalty provision.  The royalty provision is contained in the lease agreement and the lease agreement itself is integrated; therefore, this portion of the fraudulent inducement claim will be dismissed.  This holding will have little practical effect on plaintiff's claim as the second count of the complaint,

_____

[4]Although we do not make a final ruling on the merits of this argument, we have narrowed the issue considerably.  At the appropriate time, the sole remaining facet of this issue for the court to address is: does the integration clause contained in the lease serve to "integrate" the "consideration letter."

11

which we will discuss next, also deals with whether the royalty provision of the lease violates Pennsylvania law.

## II. Royalty

The second count of the plaintiff's amended complaint is an action for declaratory judgment relief.  The declaratory judgment action involves the payment of royalties under the lease.  Plaintiff asserts that the royalty provision violates Pennsylvania law.  Defendant moves to dismiss this count insisting that the lease comports with Pennsylvania law.

Under the Pennsylvania Statutes section titled "Oil and Gas Leases," a lease conveying rights to remove or recover oil or natural gas is invalid unless it guarantees that the lessor receives at least one-eighth (1/8th) royalty of all oil or natural gas recovered or removed.  58 PENN. STAT. § 33.[5]

In the instant case, the lease provides for a royalty of one-eighth of the amount realized from the sale of gas at the well, which the lease defines as " the amount realized less all costs of gathering, transportation, compression, fuel, line loss and other post-production expenses incurred

---

[5]Specifically, the law provides:

> A lease or other such agreement conveying the
> right to remove or recover oil, natural gas or gas of
> any other designation from lessor to lessee shall
> not be valid if such lease does not guarantee the
> Lessor at least one-eighth royalty of all oil, natural
> gas or gas of other designations removed or
> recovered from the subject real property.

58 P.S. § 33.

downstream of the wellhead." (Lease ¶ 1).[6]  Plaintiff argues that because the lease calls for the subtraction of certain costs from the royalty, then the lease does not comply with Pennsylvania law.  Defendant argues that the royalty provision of the lease is the standard in the industry and provides all that is required by Pennsylvania law.

A plain reading of the statute supports the plaintiff's position.  The statute calls for a guaranteed one-eighth royalty and does not provide for the subtraction of any costs.   In its initial brief, the defendant argues that the lease complies with the statute as written with little further legal analysis. (Doc. 3, Defendant's Brief in Support of Motion to Dismiss at 5-6).

_____

[6]Specifically, the lease provides:

> Lessee shall deliver to the credit of Lessor, free of cost, into Lessor's tanks on the premises or in the pipeline thereon which Lessor may designate, the equal one-eighth (1/8th) part of all oil or liquid hydrocarbons produced and saved from the premises, and shall pay the Lessor on gas, including casing head gas and other gaseous substances, produced and sold from the premises one-eighth (1/8th) of the amount realized from the sale of gas at the well (meaning the amount realized less all costs of gathering, transportation, compression, fuel, line loss and other post-production expenses incurred downstream of the wellhead).  Payment for royalties in accordance herewith shall constitute full compensation for the gas and all of its components.  No royalty shall be due on stored gas produced from the premises or on gas produced from a storage formation or formations hereunder.

(Lease ¶ 1).

 This argument is without merit as a plain reading of the statute provides for a guaranteed one-eighth royalty.  Although the lease technically does provide for a one-eighth royalty, it then proceeds to explain that costs will be deducted from that amount.  The royalty then becomes less than one-eighth and a violation of the plain language of the statute.  The defendant, however, in subsequent briefs expands upon its arguments, and the motion will not be denied on this basis.[7]

In its second brief, defendant argues that the term "royalty" used in the statute should be construed to allow for the deduction of post-production costs.  Defendant argues that  "[i]ndustry standards and practice from all of the oil and gas producing states and the case law from all such jurisdictions prove that Plaintiff is receiving . . . a full one-eighth royalty.  The costs referred to in the lease are costs that no jurisdiction of which [Defendant] is aware treats as part of the calculation of a royalty

_____

[7]The Court of Common Pleas of Susquehanna County Pennsylvania recently ruled on a similar issue involving the term "royalty" in a gas lease. (See  Doc. 44,  Kilmer v. Exleco, No. 2008-57, (Susquehanna County Court of Common Pleas, March 16, 2009)).  The lease in that case called for the subtraction of post-production costs from the one-eighth royalty. (Id. at 2).  The lessees asserted that the lease was invalid as it did not provide the minimum mandatory one-eighth royalty.  (Id.).  The court found that on its face, the royalty statute "does not prohibit the inclusion of 'post production' costs to calculate the one-eighth royalty."  (Id. at 3).  Therefore, the parties were free to negotiate the calculation of the royalty. (Id.).  We respectfully disagree with the Kilmer analysis. The issue presented is whether the mandatory one-eighth royalty is achieved if post-production costs are deducted before payment.  To make such a determination, it is necessary to construe the term "royalty" as used in the statute.  We are not convinced that merely because the statute is silent on whether post-production costs can be deducted means that such costs can in fact be legally deducted from the royalty.

interest."  (Doc. 10, Defendant Reply Brief at 8-9).

With regard to statutory construction of terms, Pennsylvania law provides:  "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; **but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition**."  1 Penn. Cons. Stat. § 1903(a) (emphasis added); <u>Coleman v. W.C.A.B.</u>, 842 A.2d 349, 353 (Pa. 2004) ("Generally, words and phrases are construed according to their common usage, and technical words and phrases that have acquired peculiar and appropriate meaning are accorded that meaning.").

Defendant urges us to find that "royalty" has developed peculiar meaning in the oil and gas industry, thus we should apply that meaning as opposed to the common and approved usage of the term.   Defendant's position is that the "overwhelming body of caselaw defines a 'royalty' as an interest or the proceeds from the sale of that interest which are free from the costs of drilling, completing and equipping the well so as to bring the oil and gas to the surface."  Thus, if the lessee drills a well and finds no oil or gas, the loss is on the lessee.  Defendant distinguishes the costs of actually bringing the gas to the surface from the costs incurred after the gas leaves the wellhead.  It claims that these costs are not involved in determining the 'royalty'.  Such costs, as set forth in the lease, include: "all costs of gathering, transportation, compression, fuel, line loss and other post-production expenses incurred downstream from the wellhead." (Lease ¶ 3).   Under defendant's definition of the term, "royalty" means the

proceeds from the sale of the gas after all the costs of production have been paid by the gas company.  The allocation of post-production expenses is separate and is determined by other provisions in the lease.

Plaintiff, however, points out that contrary to defendant's position, not all jurisdictions follow the definition of "royalty" that defendant proposes.  Several jurisdictions determine the royalty based upon the "First Marketable Product Doctrine."  Under this doctrine, so-called "post-production costs" should not be deducted from a royalty payment.  The Pennsylvania Supreme Court Pennsylvania recognized this theory in a decision that is over one hundred years old, but evidently still good law. See Iams v. Carnegie Natural Gas Co., 45 A. 54 (Pa. 1899).

In fact, the cases cited by the defendant recognize that two schools of thought exist.  For example, in  Garman v. Conoco, Inc., 886 P.2d 652, 657 (Colo. 1994), a case cited by the defendant in support of its position, the Colorado Supreme Court  explained as follows:

> No consensus exists regarding the allocation of expenses incurred after the discovery of gas. . . .Two lines of cases have developed in the oil producing states based upon differing views of when production is established and a royalty interest accrues. Texas and Louisiana have adopted the rule that nonoperating interests must bear their proportionate share of costs incurred after gas is severed at the wellhead. See, e.g., Dancinger Oil & Refineries v. Hamill Drilling Co., 171 S.W.2d 321 (Tex.1943); *658 Martin v. Glass, 571 F.Supp. 1406, 1415 (N.D.Tex.1983) ("Under the law of Texas, gas is 'produced' when it is severed from the land at the wellhead."), aff'd 736 F.2d 1524 (5th Cir.1984); see also Merritt v. Southwestern Elec. Power Co., 499 So.2d 210 (La.Ct.App.1986) (under Louisiana's reconstruction approach royalty payments are calculated by deducting costs incurred after gas reaches the wellhead). . . .In Kansas and Oklahoma a contrary rule has developed based on an operator's implied duty to market gas produced under an oil and gas

16

> lease. <u>Wood v. TXO Production Corp.</u>, 854 P.2d 880, 882 (Okla.1992) ("[T]he implied duty to market means a duty to get the product to the place of sale in marketable form."); <u>Gilmore v. Superior Oil Company</u>, 192 Kan. 388, 388 P.2d 602, 606 (1964) ( "Kansas has always recognized the duty of the lessee under an oil and gas lease not only to find if there is oil and gas but to use reasonable diligence in finding a market for the product."). Wyoming has codified the marketability approach. The Federal government also requires that a lessee "place gas in marketable condition at no cost to the Federal Government...."
>
> Arkansas and North Dakota have reached similar conclusions when considering lease royalty clauses which are silent as to allocation of post-production costs. A lease which provides for the lessor to receive "proceeds at the well for all gas" means gross proceeds when the lease is silent as to how post-production costs must be borne. <u>Hanna Oil & Gas Co. v. Taylor</u>, 297 Ark. 80, 759 S.W.2d 563, 565 (1988); see also <u>West v. Alpar Resources, Inc.</u>, 298 N.W.2d 484, 491 (N.D.1980) (when the lease does not state otherwise lessors are entitled to royalty payments based on percentage of total proceeds received by the lessee, without deduction for costs).
>   30 C.F.R. § 206.153(i) (1993).

<u>Garman v. Conoco, Inc.</u>, 886 P.2d 652, 657-59 (Colo. 1994)(internal footnotes omitted).

We will deny the defendant's motion to dismiss. Because two different schools of thought exist with regard to the term "royalty" we will not conclude at this early stage in the litigation that the term is subject to a "peculiar" meaning under the rules of statutory construction. Furthermore, defendant's brief cites to treatises, law review articles, a document from the Pennsylvania Department of Agriculture, legislative history and opinions from other jurisdictions. Many of these opinions are dealing with summary judgment motions and non-jury trials and are construing the term

"royalty" as used in a lease, not as statutory construction.[8]  It would be premature for the court to dismiss the case at this point.  Defendant has not established that the term "royalty" should be construed so as to allow for deduction of costs in the lease and the plaintiff has not established that the term should not be so construed.   Although it claims that this is the "industry practice" plaintiff has pointed out that not all jurisdictions follow this practice.  To make a final determination on this issue we have to examine documents outside of the pleadings, which we will not do on a motion to dismiss.[9]  Thus, the motion will be denied.

**Conclusion**

For the aforementioned reasons, the defendant's motion to dismiss will be granted in part and denied in part.  The fraud in the inducement count will be dismissed, with regard only to the claim that the defendant fraudulently induced the plaintiff into entering the contract by asserting that the lease comported with Pennsylvania law.  It will be denied in all other respects.  An appropriate order follows.

---

[8]See, e.g., Heritage Resources, Inc. v. Nationsbank, 939 S.W.2d 118 (Tex. 1996) (which is an appeal of a partial summary judgment and a trial and is relied upon by defendant)

[9]We find it appropriate to deny the motion to dismiss with regard to the royalty as we are denying the motion to dismiss on the other claim on the complaint anyway and the case will have to move forward regardless.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN KROPA,** | : | **No. 3:08cv551** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CABOT OIL & GAS** | : | |
| **CORPORATION,** | : | |
| **Defendant** | : | |

## ORDER

_____**AND NOW**, to wit, this 17th day of April 2009, Defendant's motion to dismiss (Doc. 2)  is **GRANTED** with regard to the fraudulent inducement claim based upon the assertion that the lease conformed to Pennsylvania law and is  **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**